**ALLEN, Collector of Internal Revenue, v. JEFFERSON MILLS, Inc.**

No. 14149.

United States Court of Appeals Fifth Circuit.

Nov. 12, 1952.

Carolyn R. Just, Special Asst. to Atty. Gen., Ellis N. Slack, Act. Asst. Atty. Gen., John P. Cowart, U. S. Atty., Macon, Ga., for appellant.

M. E. Kilpatrick, Atlanta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

Refund of surtaxes on undistributed profits alleged to have been illegally collected from Jefferson Mills, Inc., for its taxable year 1937, was sought, and obtained, in this suit. The grounds for recovery put forth by the complaining taxpayer were that its case came within the provisions of both Section 26(c) (1) of the Revenue Act of 1936 and Section 26(c) (3) of the Revenue Act of 1936, as amended by Section 501(a) of the Revenue Act of 1942, 26 U.S.C.A.Int.Rev.Acts.[1] This

1. "§ 26. Credits of Corporations
"In the case of a corporation the following credits shall be allowed to the ex-

tent provided in the various sections imposing tax—

was true, it was contended, because any declaration of dividends during the taxable year would have violated a provision of a written contract executed by the corporation prior to May 1st, 1936, which expressly dealt with the payment of dividends, and additionally, because the financial condition of the corporation was such that any declaration of dividends would have been illegal and prohibited by the Georgia statutes,[2] so that for either, or both, reasons it was entitled to the credit provided by the statute in the computation of its undistributed profits subject to surtax.

The case was submitted to the trial Court on an agreed statement of facts. Thereupon the Court entered findings of fact and conclusions of law which sustained the taxpayer's claim *in toto*. In entire disagreement therewith, the appellant assigns error upon the grounds that under the facts and the law no valid basis for relief was established as to either claim. No contention is made that if either of the statutory excuses for non-distribution of dividends appeared the judgment for refund would be improper, nor could it well be so asserted since the statute plainly provides for two separate contingencies.

There may be room for doubt of the correctness of the trial Court's conclusion that the payment of dividends by the taxpayer during the taxable year in question was prohibited by the terms of the Georgia statutes to which we have referred, but, in any event, to resolve it would be academic and unnecessary since it is clear that the Court's conclusion upon the entirely adequate ground that the distribution of dividends during the taxable year 1937 was prohibited by the provision of a contract, as contemplated by the revenue statute, *supra*, is correct.

The Court found that by a written contract with the Bank of Manhattan Company executed in 1934, incident to extension of credit through loans to the taxpayer by the bank, taxpayer agreed that while it was utilizing such credit it would pay no dividends; · that this contract remained in force and effect during the fiscal year of taxpayer which ended September 30, 1937, and that the taxpayer availed itself of the credit throughout the taxable year. The contract found to have existed arose from obligations stated and assumed in letters between the bank and the taxpayer and the subsequent business dealings and conduct between the parties. In response to an application for an unsecured line of credit, accompanied by audit reports of the taxpayer, the bank declined to extend the credit requested, but stated its willingness to discount its unsecured 90 day notes up to $50,000 subject to the agreement of the proposed borrower on five points, the one especially material here being: "(5) That you will not pay dividends while indebted to us." In reply, the taxpayer, by its Treasurer, wrote that "The five restrictions named in your letter will be complied with * * *" and forwarded a 90 day note of $50,000 for discount and ·deposit, which was done. The letter concluded with an expression of an-

"(c) [as amended by Sec. 501(a) (2) of the Revenue Act of 1942, c. 619, 56 Stat. 798] Restrictions on payment of dividends.—(1) Prohibition on payment of dividends. An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.

\* \* \* \* \*

"(3) Deficit corporations. In the case of a corporation having a deficit in accumulated earnings and profits as of the close of the preceding taxable year, the amount of such deficit, if the corporation is prohibited by a provision of a law or of an order of a public regulatory body from paying dividends during the existence of a deficit in accumulated earnings and profits, and if such provision was in effect prior to May 1, 1936."

2. Code of Georgia, 1933, §§ 22–713, 22–9901.

 

ticipation that "this connection" would be "a mutually satisfactory relationship which will continue through the years." It appears that the arrangement did continue and business was transacted between the parties impliedly on that basis. During 1936 there was an extended period when no indebtedness existed, but in the taxable year, except for three short lapses in time, taxpayer was continuously indebted to the bank. These three periods were as follows: November 14th to 16th, 1936; February 12th to 15th, 1937; and May 14th to June 1st, 1937. Appellant contends that under these circumstances the prohibition of the payment of dividends was not effective throughout the taxable year, and further, that the contract was a unilateral offer, and therefore any restriction in the contract was effective and dated only from the times the loans were made and thus were not imposed by a contract executed prior to May 1st, 1936, as required by the statute. We think this a strained construction and unreal application of the provision of the agreement of the parties and their subsequent conduct in performance of it. The situation was that of a borrower having a need for, and obtaining, loans which were during the taxable year, for all practical purposes continuously in effect, and who could secure renewals and advances only subject to the agreement which prohibited the distribution of dividends during the existence of any indebtedness. Consequently, the existence of the agreement should rightly be held effective in the taxable year involved, even though there were three brief periods during which no actual indebtedness existed. It is clear from a consideration of the transactions between the parties that an attempted declaration of dividends co-incident with any of the brief periods in which no indebtedness existed (even if Sundays and Holidays be not excluded) would, in every real sense, have been contrary to the intentions of the parties as evidenced by their agreement and the course of dealings thereunder.

The facts of this case show that the taxpayer was prohibited from a distribution of dividends during the fiscal year 1937 by the provisions of its written contract with the Bank of Manhattan Company, which dealt expressly with the payment of dividends, and the trial Court correctly so held.

Judgment affirmed.